**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| NAQUAYLIA RHODES | ) | |
| | ) | |
| *Individually and on Behalf of* | ) | |
| *All Others Similarly Situated,* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:25-cv-000068-JPH-MG |
| | ) | |
| HOPP, INC. | ) | |
| D/B/A NIGHT MOVES | ) | |
| | ) | |
| Defendant, | ) | |

*MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL*
*OF THE CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE*

### I.    INTRODUCTION

Plaintiff Naquaylia Rhodes ("Plaintiff" or "Rhodes") asserts claims which relate to the payment of wages to employees of Defendant Hopp, Inc. d/b/a Night Moves ("Defendant" or "Night Moves") (Plaintiff and Defendant are the "Parties") from January 10, 2023, through November 10, 2025 ("Class Period").

After conducting an exchange of written discovery, including an exchange of time and compensation data illustrative of the Class/Collective claims, a deposition of Defendant's Corporate Designees, and the Parties' participation in a Settlement Conference conducted by the United States Magistrate Judge, the Parties agreed to settle this matter and, thereafter, executed a Class Action Settlement Agreement and Release ("Agreement"), which is attached as Exhibit 1 to the Parties' Joint Motion for Preliminary Approval of Class Action Settlement Agreement and Release ("Joint Motion").

The Agreement settles Plaintiff's individual and Class/Collective claims under the Indiana Wage Payment Statute, I.C. § 22-2-5-2 ("IWPS") and the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, et seq. ("FLSA"). The Agreement provides for an opt-out/opt-in Settlement in which Rule 23 Class Members can choose to opt-out of the class action portion of the Settlement resolving the IWPS claims and putative members of the FLSA Collective can choose whether to opt into the FLSA portion of the Settlement resolving the FLSA claims. The Parties have also briefed the elements of Rule 23(a), Rule 23(b)(3), and the relevant issues under the FLSA in this Memorandum.

The Parties' Settlement involves the certification, for settlement purposes only, of a class under Federal Rule of Civil Procedure 23(b)(3) and a Collective under the FLSA Section 216(b). The proposed Federal Rule 23 IWPS Class ("Rule 23 Class") and proposed FLSA Collective ("FLSA Collective") consist of all persons Defendant employed within the Class Period as an exotic dancer within Defendant's Night Moves Gentlemen's Club in Bloomington, Indiana, who Defendant classified as an independent contractor, and who did not receive wages directly from Defendant.  There are approximately 106 Class/Collective Members. While maintaining that Plaintiff and the Class/Collective Members were properly classified as independent contracts and denying liability, Defendant has agreed to pay the Class/Collective Members in accordance with the terms of the Parties' Agreement.[1] This early resolution of claims avoids the substantial time, expense, and risk of litigating this Class/Collective action.

---

[1] Any terms not defined in this Memorandum are defined in the Parties' Agreement.

While Plaintiff and Defendant fundamentally disagree as to the proper classification for Plaintiff and the Class/Collective Members, Defendant's alleged liability, and the most likely outcome in the case, data showed that the average Class Collective Member holds a maximum unpaid wage claim that is small. Based on their review of the records and their analysis of the relative value of the claims, the Parties have agreed to attribute twenty-five percent (25%) of the Net Settlement Amount[2] to the Settlement Shares for the FLSA Collective ("FLSA Collective Portion of the Net Settlement Amount") and seventy-five percent (75%) of the Net Settlement Amount to the Settlement Shares for the Rule 23 Class ("Rule 23 Class Portion of the Net Settlement Amount").

The FLSA Collective Portion of the Net Settlement Amount will be divided pro rata and paid to each eligible FLSA Collective Member as an individually determined percentage, determined by dividing her work hours during the Class Period by the total number of hours worked during the Class Period by all eligible FLSA Collective Members who timely opted into the FLSA Collective. Similarly, the Rule 23 Class Portion of the Net Settlement Amount will be divided pro rata and paid to each eligible Rule 23 Class Member as an individually determined percentage, determined by dividing her work hours during the Class Period by the total number of hours worked during the Class Period by all eligible Rule 23 Class Member who did not timely opt out of the Rule 23 Class. By this methodology, the Parties fairly apportion the Settlement Amount in a way that Plaintiff and her Class/Collective counsel believe will fairly compensate both the Rule 23 Class and the FLSA Collective.[3]

---

[2] The Net Settlement Amount means the Settlement Amount to be paid by Defendant pursuant to the Agreement less deductions for: (1) Court-approved attorneys' fees, costs, and expenses for Class/Collective Counsel and (2) any Court-approved Service Award to Rhodes.

[3] For purposes of finalizing a proposed Class Member settlement allocation, Defendant continues to compile a list of Class Member identifiers with corresponding attendance records during the

Through their Joint Motion, the Parties request that the Court enter the proposed Order Preliminarily Approving the Class Action Settlement Agreement and Release and Class/Collective Notice and Setting Fairness Hearing ("Preliminary Approval Order"), which (1) sets forth the findings required by Federal Rules of Civil Procedure 23(a) and 23(b)(3) and 29 U.S.C. § 216(b), (2) grants provisional certification of the Rule 23 Class for settlement purposes only pursuant to Rule 23(b)(3), provisional certification of the FLSA Collective for settlement purposes only pursuant to 29 U.S.C. § 216(b), and preliminary approval of the Agreement and Settlement,[4] (3) approves the proposed Notice of Class/Collective Action Settlement and Fairness Hearing ("Settlement Notice," which is attached to the Agreement) and authorizes the mailing of the Settlement Notice to the Class/Collective Members, (4) appoints Class/Collective Counsel, and (5) schedules a Fairness Hearing for final approval of the Agreement and Settlement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed her Class and Collective Complaint in this action alleging that Defendant violated Plaintiff and the Class/Collective Members' FLSA and the IWPS wage payment rights by (a) misclassifying Plaintiff and the Class/Collective Members as non-employee independent contractors and (b) failing to pay Plaintiff and the Class/Collective Members direct wages for the hours Plaintiff and the Class/Collective Members worked as exotic dancers within Defendant's Night Moves Gentlemen's Club.

---

period January 10, 2023, through November 10, 2025, but assures Plaintiffs that the list will be provided and a proposed Class Member settlement allocation with be filed as a Supplemental for this Court's review and preliminary approval before the date Notice of the Settlement is to be mailed to Class Members.

[4] The Parties' Agreement and Settlement is conditioned on the Court's preliminary and final approval of the Agreement. Absent such approval, the Parties reserve their rights, including, but not limited to, Defendant's right to contest liability and Class/Collective certification.

Following the initial pleading stage, the Parties promptly engaged in discovery. By so doing, Defendant produced and Plaintiff obtained records documenting Plaintiff and the Class/Collective Members' shifts worked during the Class Period and related records evincing that during the Class Period, Defendant commonly classified Plaintiff and the Class/Collective Members as non-employee independent contracts and did not pay Plaintiff or the Class/Collective Members direct wages for the hours Plaintiff and the Class Collective members worked as exotic dancers within Defendant's Night Moves Gentlemen's Club. This same information was corroborated through the deposition testimony of Defendant's Corporate Designees.

Following the foregoing necessary discovery, Plaintiff was capable of demonstrating good cause for this Court to certify the Rule 23 Class and the FLSA Collective and able to accurately and reliably demonstrate FLSA and IWPS damages owed to Plaintiff and each Class/Collective Member. As such, Plaintiff then filed her Motion seeking certification of the Rule 23 Class and the FLSA Collective, which Defendant opposed.

Following briefing on Plaintiff's Class and Collective Action Certification Motion, the Parties discussed the potential for resolution. The Parties then engaged in arms-length negotiation and participated in a Settlement Conference administered by a United States Magistrate Judge.

With the Court's assistance, the Parties reach a settlement and executed the Agreement. Because the Parties' Agreement seeks to resolve the claims of all Class/Collective Members, the Agreement requires the certification, for settlement purposes only, of the following class under Federal Rule of Civil Procedure 23(b)(3)[5] and the FLSA Collective under the FLSA Section 216(b)[6].

### III.    LEGAL ARGUMENT

For purposes of this Settlement, the Parties agree that the requirements for certification of a settlement Class/Collective have been met.[7] The Agreement was negotiated at arms-length, with the input and assistance if the United States Magistrate Judge, and the terms are favorable to all Class/Collective Members when compared with the potential benefits and risks of further litigation.  If the Court grants this Joint Motion, the Parties will seek a final order approving the Agreement and Settlement after the proposed Settlement Notice has been sent and the Class/Collective Members have had the opportunity to opt out of the Rule 23 Class, opt into the FLSA Collective, or object to the Agreement and Settlement.

---

[5] All persons who are employed or have been employed at any time from January 10, 2023, to November 10, 2025, as an exotic dancer by Night Moves in Bloomington, Indiana in a position that was classified as an independent contractor, who did not receive wages directly from Night Moves; and who do not timely and properly follow the procedure specified in the Settlement Notice by the Court to validly "opt out" of the Settlement.

[6] All persons who are employed or have been employed at any time from January 10, 2023, to November 10, 2025, as an exotic dancer by Night Moves in Bloomington, Indiana in a position that was classified as an independent contractor, who did not receive wages directly from Night Moves, and who timely and properly follows the procedure specified in the Settlement Notice approved by the Court to validly "opt in" to the Settlement.

[7] Defendant reserves all rights to contest Class/Collective certification  if the Agreement or Settlement are not approved.

## A.  The Agreement and Settlement Should be Given Preliminary Approval

When parties seek preliminary approval of a class action settlement agreement, the court must decide "whether the proposed settlement is 'within the range of possible approval.'" *Chapman v. Bowman, Heintz, Boscia & Vician, P.C.*, 2015 WL 9478548, at *7 (N.D. Ind. 2015) (quoting *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980)). The Agreement and Settlement reached in this case is solidly within the "range of possible approval." *Id.*

Under Federal Rule of Civil Procedure 23(e)(2), the court may approve a class action settlement if "it is fair, reasonable, and adequate." As one district court within the Seventh Circuit recently articulated:

> In assessing a settlement's fairness, "relevant factors include: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) [the] stage of the proceedings and the amount of discovery completed."

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 2016 WL 305380, at *6 (N.D. Ill. 2016) (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)). Federal courts naturally favor the settlement of class action litigation. *See EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888–89 (7th Cir. 1985) (noting "the general policy favoring voluntary settlements of class action disputes"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3rd Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also* William B. Rubenstein, 4 Newberg and Rubenstein On Class Actions § 13.1 (6th ed. 2022) (noting that there is a "strong judicial policy in favor of class action settlement" (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3rd Cir. 2010)); *id.* § 13.44 ("The law favors settlement, particularly in class actions and

other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals. Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation." (footnote omitted)). Where "the size of the class is small, the cost of notice minimal, and the issues discrete, the court may be able to determine that class certification is proper and the settlement is 'within the range of possible approval' with minimal fuss." *In re Nat'l Collegiate Athletic Ass'n*, 2016 WL 205380, at *6.

"To determine the fairness of an FLSA settlement, '[t]he Court must consider whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Adams v. Aztar Ind. Gaming Co.*, 2023 WL 2197075, at *4 (S.D. Ind. 2023) (quoting *Schneider v. Union Hosp., Inc.*, No. 2:15-cv-00204-JMS-DKL, Docket No. 126 at *2 (S.D. Ind. May 9, 2017)). In deciding the fairness of an FLSA settlement, this Court looks to many of the same factors that it considers when determining whether a settlement is fair, reasonable, and adequate under Rule 23(e). *See id.* (approving a settlement and release under the FLSA as "a fair and reasonable resolution of a *bona fide* dispute" for the same reasons that the Court found the settlement to be "fair, reasonable, and adequate under Rule 23(e)(1)").

In the present case, the Agreement and Settlement satisfy the fairness requirements for multiple reasons. First, prior to entering into the Agreement and Settlement, the Parties actively participated in discovery and exchanged documents and information permitting the Parties to fully understand and evaluate the scope of potential damages and assess the strengths and weaknesses of their respective positions. *See Chapman*, 2015 WL 9478548, at *7 (In granting preliminary approval of the settlement, the court noted that "[t]he litigation has been pending for

six months, during which time, the parties were able to assess the strengths and weaknesses of their respective positions.").

Second, the Agreement appropriately considers the Parties' bona fide dispute on the fundamental issue of Defendant's liability and realistic concerns related to Defendant's ability to financially satisfy a substantial Class/Collective Action Judgment.  The Agreement and Settlement allocates a comparatively fair less-than-full value individually allocated recovery for each Class/Collective Members based on the number of hours each Class/Collective Member worked within the Class Period.  The amount paid by Defendant and allocated to each Class/Collective Member fairly reflects that Class/Collective Members' legal entitlement recovery of damages was not foregone and was certainly not conceded as owed by Defendant. Defendant has vigorously disputed its liability and argues ardently that Defendant properly classified Class/Collective Members as non-employee independent contractors who were never entitled to payment of wages under the FLSA or IWPS.  Further, outside the context of this motion for the purposes of settlement, Defendant disputes the propriety of this Court's certification of a Rule 23 Class or FLSA Collective.  Equally important, Defendant asserts, and has corroborated through confidential proffers to Plaintiff and Plaintiff's counsel during settlement negotiations, that if the Court does certify the Class/Collective and the Class/Collective Members successfully obtain an Order of substantial class-wide damages, it is unlikely that Defendant will have the financial capability to satisfy the resulting judgment, resulting in a pyrrhic legal victory - - and the potential for no monetary recovery for Class/Collective Members.  This risk underscores how and why all Parties benefit from the Settlement and Agreement as a means of avoiding the reality of protracted and uncertain litigation on the issues involved in this case. *See Chapman*, 2015 WL 9478548, at *7–8.

Finally, adding to the reasonableness of the Settlement and Agreement, and to quote from the Northern District of Indiana, "class members will obtain these benefits much more quickly than had the parties not settled," and "even if the case reached trial, the class members would not receive benefits for many years, if they received any at all." *Id.* at *7 (quoting *Swift v. DirectBuy, Inc.*, 2013 WL 5770633, at *5 (N.D. Ind. 2013)). As such, the Agreement and Settlement are fair, reasonable, and adequate, and preliminary approval is warranted.

## B.  Class Certification for Settlement Purposes is Proper Under Rule 23

### 1.  Standard

"In deciding whether to certify a class, the Court may not blithely accept as true even the well-pleaded allegations of the complaint but must instead 'make whatever factual and legal inquiries are necessary under Rule 23' to resolve contested issues." *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 443 (S.D. Ind. 2012), citing *Szabo v. Bridgeport Machs., Inc.* 249 F.3d 672, 676 (7th Cir. 2001). Specifically, the Court must find that the putative class satisfies the four prerequisites set forth in Rule 23(a). If the putative class does satisfy these prerequisites, the Court must additionally find that it satisfies the requirements set forth in FRCP 23(b), which vary depending upon which of three different types of classes is proposed.

The four prerequisites under Rule 23(a) are: "(1) [that] the class is so numerous that joinder of all its members is impracticable; (2) [that] there are questions of law or fact common to the class; (3) [that] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) [that] the representative parties will fairly and adequately protect the interests of the class." Class certification is not appropriate unless the named plaintiff establishes all four prerequisites. *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 156 (1982). Class settlements, in turn, are governed by Rule 23(e).

### 2. *Identifiable Class*

Before reaching the Rule 23 requirements, the court must first determine whether "the class is indeed identifiable." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). A class is identifiable if class membership can be readily obtained by reference to objective criteria. *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 496 (7th Cir. 2012). If class membership can only be determined by individualized fact-finding or "mini-trials," then a class action is inappropriate. *In re Skelaxin (Metaxalone) Antitrust Lit.*, 299 F.R.D. 555, 567 (E.D. Tenn. 2014); *see also Bledsoe v. Combs*, 2000 WL 681094, at *4 (S.D. Ind. 2000) (finding proposed class action unmanageable where court could not determine whether one was a member of the class "without hearing evidence on what would amount to the merits of each person's claim"); *Gentry v. Floyd Cty.*, 313 F.R.D. 72, 76 (S.D. Ind. 2016).

Here, the Class/Collective is easily identifiable through Defendant's attendance and time and compensation records produced in discovery. The claim of each Class/Collective Member is based on the same law and facts (i.e., Defendant's misclassification of each Class/Collective Member and corresponding payment of no direct wages to each Class/Collective Member for each hour worked during the Class Period). Nothing individualized exists in the evaluation of classification and compensation policies.

### 3. *The Rule 23 Class Meets All Four Requirements of Rule 23(a)*

#### a. **Numerosity**

The Federal Rules of Civil Procedure require that the class be so large as to render joinder of all parties impracticable. Fed. R. Civ. P. 23(a)(1). Although no fixed numerosity rule exists and "no magic number satisfies this element," the Court must consider factors such as class size, ease of identifying members, geographic dispersion of members, and the magnitude of

individual claims. *Young v. Magnequench Int'l, Inc.*, 188 F.R.D. 504, 506 (S.D. Ind. 1999). The

court also "considers judicial economy and the ability of class members to institute individual

suits." *Schmitt v. United States*, 203 F.R.D. 387, 401 (S.D. Ind. 2001).

Here, Defendant provided attendance and time and compensation records in discovery

identifying approximately 106 individual Class/Collective Members who, during the Class

Period, were each (a) employed by Defendant to work as exotic dancers within Defendant's

Night Moves Gentlemen's Club during the Class Period, (b) classified by Defendant as non-

employee contractors, and (c) were paid no direct wages from Defendant for their hours worked.

Numerosity is met. *See Smith v. GC Servs. Ltd. P'ship*, 2017 WL 3017272, at *2 (S.D. Ind.

2017) ("[J]oinder is considered impractical when a class numbers at least forty members."

(quoting *Walker v. Calusa Inv., LLC*, 244 F.R.D. 502, 506 (S.D. Ind. 2007))); *Cox v. Am. Cast

Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (concluding that "generally . . . more than

forty [is] adequate"); *Morris v. Risk Mgmt. Alts., Inc.*, 203 F.R.D. 336, 342 (N.D. Ill. 2001)

(numerosity met with 40 class members); *EEOC v. Printing Indus. of Metro Wash., D.C., Inc.*,

92 F.R.D. 51, 53 (D.C. Cir. 1981) (as few as 25-30 class members meet numerosity

requirement).

### b.  Commonality

The second requirement for class certification, set forth in Rule 23(a)(2), is that there

must be "questions of law or fact common to the class." "Commonality requires the plaintiff to

show that the same conduct or practice by the same defendant gives rise to the same kind of

claims from all class members." *Smith*, 2017 WL 3017272, at *3 (citing *McCaster v. Darden

Rests., Inc.*, 845 F.3d 794, 800 (7th Cir. 2017)). "What is critical is standardized conduct towards

members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" and that "[t]heir claims . . . depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)

 "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id*. at 2556. "Rule 23(a)(2) does not demand that every member of the class have an identical claim," and some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified. *Spano v. Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011); *see also Rosario v. Livaditis*, 963 F.2d 1013, 1017–18 (7th Cir. 1992). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele,* 149 F.3d at 594 (quoting *Rosario*, 963 F.2d at 1018).

Here, every Class/Collective Member was treated identically. During the Class Period, each Class/Collective Member (a) was employed by Defendant to work as exotic dancers within Defendant's Night Moves Gentlemen's Club during the Class Period, (b) was classified by Defendant as non-employee contractors, and (c) was paid no direct wages from Defendant for their hours worked.  As such, every class member is factually identical and has the exact same legal claims.

### c.  Typicality

The third requirement for class certification, established in Rule 23(a)(3), is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality requirement is closely related both to the common question requirement of Rule 23(a)(2) and the adequacy of representation requirement of Rule 23(a)(4). *Amchem Prods., Inc.*

*v. Windsor*, 521 U.S. 591, 626 n.20 (1997); *Oritz v. Eichler*, 616 F. Supp. 1046, 1056 (D. Del. 1985). The typicality requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596–97 (7th Cir. 1993). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De la Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

Here, Defendant's typical and common defense - that Class/Collective Members were properly classified as non-employee independent contractors and, therefore, hold no entitlement to wages under the FLSA or IWPS. This same defense is asserted by Defendant in defense to Plaintiff's individual FLSA and IWPS claims and the FLSA and IWPS claims asserted by or on behalf of each Class/Collective Member. In the same way, Plaintiff presents a typical and common assertion that during the Class Period, she and each Class/Collective member was, as a matter of law, Defendant's employees under the FLSA and IWPS, and were therefore entitled to payment of direct wages at an hourly rate at least equal to the Federal Minimum Wage for all hours worked. As such, Plaintiff asserts that Defendant's common and class-wide mistaken classification of Plaintiff and the Class/Collective Members as non-employee contractors and corresponding payment of no direct wages to Plaintiff or the Class/Collective Members for hours worked during the Class Period resulted in a common and class-wide violation of Plaintiff and the Class/Collective Members' wage payment rights under the FLSA and IWPS. *See Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2000 WL 1774091, at *5 (N.D. Ill. 2000) ("Plaintiff's and the class members' claims arise out of the same allegedly unlawful conduct—defendants' failure

to pay wages for hours worked and overtime rates.").[8]

### d. Adequacy

Under Rule 23(a)(4), the representative plaintiff must "fairly and adequately protect the interests of the class." This means that the class representative "1) cannot have antagonistic or conflicting claims with other class members; 2) must have a sufficient interest in the outcome of the litigation to ensure vigorous advocacy; and 3) must retain counsel that is competent, experienced, and generally able to vigorously conduct the proposed litigation. *Hawkins*, 287 F.R.D. at 446.

Plaintiff easily meets the first two requirements. Plaintiff presents the same claim for unpaid wages based upon Defendant's class-wide misclassification and failure to pay direct wages during the Class Period as the rest of the Class/Collective Members. Plaintiff is motivated to recover her alleged unpaid wages and damages, just as the other Class/Collective Members are motivated to recover their own alleged unpaid wages on a Class/Collective-wide basis. Plaintiff actively participated in the litigation and settlement negotiations, and she has a stake in the outcome of the case.

With respect to competent, experienced and motivated counsel, Attorneys Kondras and Greenberg have substantial experience litigating both Class and Collective action wage and hour claims. Plaintiff's attorneys have proven track records of obtaining wages for classes of workers. Plaintiff's counsel completed an extensive investigation into the facts and claims of this case.

---

[8] "Typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011); *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 150 (3d Cir. 2008) ("Factual differences will not defeat typicality if the named plaintiffs' claims arise from the same event or course of conduct that gives rise to the claims of the class members and are based on the same legal theory.").

Finally, Plaintiff's attorneys have pledged to commit the full resources of their law firms to the prosecution of this action. Because of the demonstrated history of counsel in employment litigation in federal courts in Indiana and in surrounding jurisdictions, and the lack of conflicts of interest for Plaintiff or the undersigned Plaintiff's attorney, representation for the class/collective is adequate.

### 4. Certification is Appropriate at This Time

Rule 23(c)(1) states that the Court should determine the propriety of proceeding as a class action, "at an early practicable time." In this case, the Parties agreed to conduct discovery before litigating class/collective certification. Certification at the present time will allow Class/Collective Members to be notified of their potential right to compensation from Defendant under the Settlement and Agreement and instruct Class/Collective Members of their options. Certification is appropriate at this stage.

### 5. The Rule 23 Class Meets the Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires a showing that: (1) issues common to the class "predominate" over those affecting individual class members; and, (2) prosecuting the litigation as a class action is "superior" to other available methods of proceeding. *Amchem*, 521 U.S. at 615. When making this inquiry, the Court must examine the interests of the class members in individually controlling a separate action, the extent and nature of any litigation already commenced by class members, the desirability of the forum and the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A–D). Considering these factors, both the "predominance" and the "superiority" requirements are met in the present action.

#### a. Predominance

The standard to determine whether common questions predominate is a flexible one,

focusing on whether the common issues are a significant enough part of the case that proceeding as a class action makes sense. "The Rule 23(b)(3) predominance inquiry is whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *see also Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986) ("In order to 'predominate' common issues must constitute a significant part of the individual case."); *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 245 (E.D.N.Y. 1998) ("The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions to render the class action valueless.").

Under Rule 23(b)(3), Plaintiff must show that the issues common to the class "predominate" over those affecting individual class members and prosecuting the litigation as a class action is "superior" to other available methods. *Amchem*, 521 U.S. at 615. Common questions predominate when they "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Wright & Miller, Federal Practice & Procedure:* Civil § 1788; *see Amchem*, 521 U.S. at 615–16. The predominance requirement is satisfied when there is an "essential factual link between all class members." *Hubler*, 193 F.R.D. at 580. Similarly, not all questions of law or fact need to be identical as long as there are common questions at the heart of the case. *Hubler*, 193 F.R.D. at 577. The significant issue is whether "the class claims arise out of the same legal or remedial theory." *Id.*

In this case, the legality or illegality of Defendant's classification of Plaintiff and Class/Collective Members as non-employee independent contracts and corresponding failure to pay direct wages to Plaintiff and Class/Collective Members during the Class Period "is the dominant, central focus of the proposed class action." *Hubler*, 193 F.R.D. at 580–81 (finding Rule 23(b)(3) predominance and stating, "every member of the proposed class shares the desire

to reassert control over what it believes is its marketing money and a common belief that General Motors has in essence stolen its money by exerting exclusive control over the marketing funds.").

The only issue in the instant case that could be individual to each class member is damages. But it is well-established that individual damage issues do not defeat a finding that common liability issues predominate under Rule 23(b)(3). *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d at 246–247; *see also Sala v. Nat'l R.R. Passenger Corp.*, 120 F.R.D. 494, 499 (E.D. Pa. 1988); *De la Fuente*, 713 F.2d at 233 (granting certification despite differing damages, stating it did not affect manageability).

### b. Superiority

The specific factors set forth in Rule 23(b)(3) dictate the superiority of this case proceeding as a class action:

> The matters pertinent to the findings of [predominance and superiority] include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Because of the factual and legal uniformity of Plaintiff and the Class/Collective Members' claims, it would be needlessly repetitive if the Class/Collective Members were forced to prosecute their claims individually. A Class/Collective action in the case at bar meets the superiority test of Rule 23(b)(3) because the difficulties and expense of prosecuting this type of litigation would be counterproductive for both Parties. Individual damages on the wage claims may be relatively small, but attorney fee awards are mandatory for each successful plaintiff under the FLSA and IWPS.

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually the attorney's) labor.

*Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). A Class/Collective action is the most effective vehicle available to prosecute these claims, particularly when considering litigation costs, the limited amount of alleged damages per Class/Collective Member, judicial economy, and that Class/Collective Members were subject to the same policy relating to breaks and used the same time keeping system.

Finally, the legality or illegality of Defendant's classification of Plaintiff and the Class/Collective Members and its corresponding failure to pay direct wages to Plaintiff and the Class/Collective Members during the Class Period can and should be evaluated in a single lawsuit. The core of Plaintiff's claims, on behalf of herself and the Class/Collective, is that Plaintiff and the Class/Collective Members qualified as Defendant's employees under the FLSA and IWPS and should have paid for all hours worked during the Class Period as required by the FLSA and FLSA, at direct hourly rate at least equal to the Federal Minimum Wage.

### C.  A Collective Action for Settlement Purposes Is Proper Under the FLSA

The Court should also provisionally certify the FLSA Collective for settlement purposes only pursuant to 29 U.S.C. § 216(b). An employee alleging a violation of the FLSA "can bring a cause of action on her own behalf and on behalf of 'other employees similarly situated.'" *Adams v. Aztar Ind. Gaming Co.*, 587 F. Supp. 753, 758 (S.D. Ind. 2022) (quoting 29 U.S.C. § 216(b)). Courts in this district "employ a two-step process to determine whether an FLSA lawsuit should proceed as a collective action." *Id.* at 759. "At the first step, the plaintiff need only make a 'modest factual showing sufficient to demonstrate that they and potential plaintiffs together were

victims of a common policy or plan that violated the law.'" *Id.* (quoting *In re New Albertsons, Inc.*, No. 21-2577, 2021 WL 4028428, at *1 (7th Cir. Sept. 1, 2021)). If this standard is met, "the court may conditionally certify the suit as a collective action and allow the plaintiff to send notice of the case to similarly situated employees who may then opt-in as plaintiffs." *Id.* The second step occurs after discovery and is more stringent. *Id.* In the second step, "the court must reevaluate the conditional certification and determine whether the plaintiffs are situated similarly enough to proceed to trial or if the conditional certification should be revoked or divided into subclasses." *Id.*

Plaintiff maintains that all the putative plaintiffs in the FLSA Collective are similarly situated because they were all impacted by Defendant's alleged common policy misclassification as non-employee independent contractors and corresponding payment of no direct wages for hours worked.  Plaintiff's allegation that she was misclassified as a non-employee independent contractor and, for this reason, did not receive direct wages for all hours worked at a rate at least equal to the Federal Minimum Wage is the same FLSA claim that each of the putative plaintiffs has against Defendant. This is the type of common policy and common claim that this Court has found to satisfy the similarly situated standard under the FLSA. *See Adams*, 587 F. Supp. at 760–61, 769 (conditionally certifying an FLSA collective based on "a common timeclock rounding policy"). And here, for settlement purposes only, the Court should provisionally certify the FLSA Collective.

### D.  **The Proposed Settlement Notice and Distribution Process are Appropriate**

The proposed Settlement Notice complies with due process and the standards of Rule 23 and the FLSA. Notice under Rule 23 must provide:

[T]he best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . . The notice must clearly and concisely state in plain, easily understood language:

(i)     the nature of the action;
(ii)    the definition of the class certified;
(iii)   the class claims, issues, or defenses;
(iv)    that a class member may enter an appearance through an attorney if the member so desires;
(v)     that the court will exclude from the class any member who requests exclusion;
(vi)    the time and manner for requesting exclusion; and
(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1) (stating, in the context of a proposed settlement, that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal").

Similarly, notice of an FLSA collective action must provide putative members of the collective with "accurate and timely notice concerning the pendency of the collective action, so they can make informed decisions about whether to participate." *Downing v. SMC Corp. of Am.*, 2021 WL 2915010, at *3 (S.D. Ind. 2021) (quoting *Cobb v. Anthem Inc.*, 2020 WL 4351349, at *3 (S.D. Ind. 2020)).

The proposed Settlement Notice satisfies these requirements. It accurately describes the terms of the Settlement and Agreement and informs the Class/Collective Members about the allocation and payment of attorneys' fees, costs, and expenses. Courts have approved notices when they provide the same or similar general information about a settlement. *See McCue v. MB Fin., Inc.*, 2015 WL 1020348, at *4 (N.D. Ill. 2015) (finding proposed notice "appropriate because it describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing"); *see also In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60

(S.D.N.Y. 1993) ("Normally, settlement notices need only describe the terms of the settlement generally."). The information provided in the proposed Settlement Notice exceeds this bare minimum and, thus, fully complies with the requirements of due process and the standards of Rule 23 and the FLSA.

## IV.    CONCLUSION

For the reasons set forth above, the Parties request that the Court grant their Joint Motion and issue the proposed Preliminary Approval Order, which (1) sets forth the findings required by Rules 23(a) and 23(b)(3) and 29 U.S.C. § 216(b), (2) grants provisional certification of the Rule 23 Class for settlement purposes only pursuant to Rule 23(b)(3), provisional certification of the FLSA Collective for settlement purposes only pursuant to 29 U.S.C. § 216(b), and preliminary approval of the Agreement and Settlement, (3) approves the proposed Settlement Notice and authorizes the mailing of the Settlement Notice to the Class/Collective Members, (4) appoints Class/Collective Counsel, and (5) schedules a Fairness Hearing for final approval of the Agreement and Settlement.

Dated: January 15, 2026                      Respectfully submitted,

/s/ *Robert P. Kondras, Jr.*                  /s/  *Betsy Sommers*
Robert P. Kondras, Jr., #18038-84            Betsy Sommers #34206-49
HASSLER KONDRAS MILLER LLP                   Matthew Hinkle #19396-29
100 Cherry Street                            COOTS, HENKE & WHEELER, P.C.
Terre Haute, IN 47807                        255 East Carmel Drive
(812) 232-9691                               Carmel, Indiana 46032
(812) 234-2881 Facsimile                     Telephone: (317) 844-4693
kondras@hkmlawfirm.com                       Facsimile: (317) 573-5385
                                             BSommers@CHWLaw.Com
 /s/_ *Gregg C. Greenberg*                    MHinkle@CHWLaw.Com
Gregg C. Greenberg (*pro hac vice*)
Virginia Bar No.: 79610                      ATTORNEYS FOR DEFENDANT
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Phone: (301) 587-9373
GGreenberg@ZAGFirm.Com

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of January 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's filing system. Parties may access this filing through the Court's system.

                      /s/Robert P. Kondras, Jr.
                      Robert P. Kondras, Jr.